IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

GRADY SNELL, JR.,                      *

     Plaintiff,                      *

vs.                                    *
                              CASE NO. 4:08-CV-171 (CDL)
COLUMBUS CONSOLIDATED                  *
GOVERNMENT, and WILLIAM ADAMSON,
Individually and in his Official       *
Capacity,
                                       *
     Defendants.

_____      *

O R D E R

     Plaintiff contends that his employer, Defendant Columbus
Consolidated Government ("Columbus"), and his supervisor, Defendant
William Adamson, retaliated against him for opposing unlawful
discrimination and for exercising his First Amendment rights.
Presently pending before the Court is Defendants' Motion for Summary
Judgment (Doc. 18).  For the reasons set forth below, the motion is
granted.

SUMMARY JUDGMENT STANDARD

     Summary judgment may be granted only "if the pleadings, the
discovery and disclosure materials on file, and any affidavits show
that there is no genuine issue as to any material fact and that the
movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c)(2).  In determining whether a *genuine* issue of *material* fact
exists to defeat a motion for summary judgment, the evidence is

viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

Pursuant to the Court's local rules, Defendants filed a statement of material facts to which Defendants contend there is no genuine issue to be tried. M.D. Ga. R. 56. Plaintiff was required to respond to that statement of material facts but failed to do so. Plaintiff did, however, file his own statement of material facts to which he contends there are genuine issues to be tried. The Court has reviewed both parties' statements of facts, as well as the portions of the record that the parties cited in support of those fact statements. The Court notes that much of Plaintiff's statement of material facts relies upon Plaintiff's "affidavit." The document purporting to be Plaintiff's affidavit, however, is not signed, dated, sworn, or notarized.[1]  Therefore, it cannot be considered in

---

[1]The Clerk of the Court notified Plaintiff of the deficiencies in the affidavit (Notice of Error in Filing, Mar. 9, 2010), and Defendants raised the issue in their reply brief (Defs.' Reply in Supp. of Mot. for Summ. J. 3-4).  Nonetheless, Plaintiff never submitted a signed, dated, sworn affidavit in support of his claims.

determining the propriety of summary judgment. *E.g., Holloman v. Jacksonville Housing Auth.*, No. 06-10108, 2007 WL 245555, at *2 (11th Cir. Jan. 30, 2007) (per curiam). Based on the Court's review of the parties' fact statements and the portions of the record cited therein, the following facts are undisputed for purposes of summary judgment, unless otherwise noted.

## I.    The Parties

Plaintiff began working for Columbus on February 1, 1997 as a corrections officer at the Muscogee County Prison ("MCP"). During the timeframe relevant to Plaintiff's claims in this action, Adamson was the warden of the MCP and was Plaintiff's ultimate supervisor.

## II.   Plaintiff's Sexual Harassment Complaint

Plaintiff became a correctional counselor in September 2000. He worked on a team with two other correctional counselors, one of whom was a female named Twyla Chester. Chester had become a correctional counselor in June 2000.

On December 6, 2005, Plaintiff and Chester filed sexual harassment complaints against each other. (Ex. A to Defs.' Statement of Material Facts, Adamson Aff. ¶¶ 5-6 , Jan. 28, 2010 [hereinafter Adamson Aff.]; Ex. A-2 to Adamson Aff., Mem. from T. Chester to H. Covington, Dec. 6, 2005; Ex. 7 to Pl.'s Dep., Jan. 7, 2010, Pl.'s Fair Treatment Report, Dec. 6, 2005.) Chester complained that Plaintiff made derogatory remarks about her work and that he referred

to her as an "ignorant young female, inexperienced, unprofessional and incapable of working with a person of his intelligence." (Ex. A-2 to Adamson Aff.)  Plaintiff complained that Chester "created a Hostile Work Environment with Sexual Harassment" by asking Plaintiff several times if it was his "time of the month," by asking how Plaintiff's wife puts up with him, and by calling him an "old ignorant ass." (Ex. 7 to Pl.'s Dep.)

Adamson received Chester's complaint on December 7, 2005. (Adamson Aff. ¶ 5.)  He received Plaintiff's complaint on December 9, 2005. (*Id.* ¶ 6.)  Adamson considered the complaints, as well as reports from other employees who worked with Plaintiff and Chester.  Adamson also met with Chester and Plaintiff; during that meeting, Adamson found a "personality conflict" between the two employees, and he "determined that both employees had engaged in unprofessional and inappropriate conduct." (*Id.* ¶¶ 8-9.)  Adamson issued written warnings to both Chester and Plaintiff and advised them that their unprofessional conduct toward each other must stop immediately. (*Id.* ¶ 9.)

Chester and Plaintiff each filed a Fair Treatment Report ("FTR") with the Columbus human resources department, complaining that Adamson had not resolved the problem satisfactorily.  Chester claimed that Adamson had taken Plaintiff's side (*Id.* ¶ 10; Ex. A-5 to Adamson Aff., Mem. from T. Chester to R. Hollowell, Jan. 19, 2006), and

Plaintiff complained that he had not gotten a "fair and helpful answer" to his complaint (Ex. 23 to Pl.'s Dep., Mem. from G. Snell to W. Adamson, Jan. 26, 2006).

## III. Plaintiff's Transfer

Adamson consulted with the Columbus human resources director, Tom Barron, and determined that the only way to resolve the problem between Plaintiff and Chester was to separate them. (Adamson Aff. ¶¶ 11-12.) Adamson viewed Chester as the senior counselor because she had been in the position slightly longer than Plaintiff. (*Id.* ¶ 12.) Therefore, Adamson transferred Plaintiff to a different position. (*Id.*) Though Plaintiff's title and responsibilities changed, the other terms of his employment—including his salary, shift assignment, and ability to engage in part-time employment—did not. (Ex. C to Defs.' Statement of Material Facts, Barron Aff. ¶ 5, Jan. 28, 2010 [hereinafter Barron Aff.].) Seniority was the only factor Adamson considered in deciding who should be transferred. (*See* Adamson Aff. ¶ 13.)

On February 8, 2006, Plaintiff submitted an FTR claiming that, based on Adamson's response to Plaintiff's complaint about Chester, Adamson had "committed gross acts of negligence, age discrimination, sex discrimination, unprofessionalism, racism, unfair treatment, reprisals," and had denied Plaintiff of his right to "due process of the Columbus . . . Fair Treatment Policy." (Ex. 34 to Pl.'s Dep.,

Fair Treatment Report, Feb. 8, 2006.) Columbus's assistant human resources director, Reather Hollowell, investigated Plaintiff's FTR. (Ex. B to Defs.' Statement of Material Facts, Hollowell Aff. ¶¶ 3-7, Jan. 27, 2010 [hereinafter Hollowell Aff.].) Hollowell concluded that Plaintiff and Chester had both engaged in inappropriate and unprofessional conduct, and she did not find any evidence that Adamson's transfer decision was motivated by an improper reason. (*Id.* ¶ 8.) Hollowell notified Barron of her decision, and Barron concluded that the transfer was appropriate under the circumstances. (Barron Aff. ¶ 6; Ex. 36 to Pl.'s Dep., Mem. from T. Barron to G. Snell, Mar. 21, 2006.)

**IV. The Newspaper Incident**

In November 2006, the Columbus Times newspaper ran an article about Plaintiff. (Attach. to Ex. 3 to Pl.'s Dep., Susie Chandler, *One Man Makes a Difference at County Prison*, Columbus Times, Nov. 2, 2006, at 6.) Among other things, the article states that Plaintiff was "responsible for establishing the On the Job Training (OJT) Certification program" at the MCP, that he "spearhead[ed] the prison's GED Program," and that he established the law library at the MCP. (*Id.*) Adamson believed that the article was inaccurate in a number of respects because (1) the article suggested that Plaintiff was responsible for initiating and maintaining certain programs even though the programs existed prior to Plaintiff's employment and/or

6

were specifically requested and authorized by the warden, and (2) the article suggested that Plaintiff alone was responsible for certain programs even though they were the result of many employees' efforts. (Adamson Aff. ¶ 14.)

After the article was published, several MCP employees commented on it to Adamson; according to Adamson, the article frustrated the other employees and had an adverse effect on morale. (*Id.*) Adamson did not discuss the article with Plaintiff. (Pl.'s Dep. 80:25-81:3.) Instead, Adamson issued Plaintiff a letter of warning for his contribution to the article, finding that Plaintiff "demonstrated an intentional indifference to the truth" and explaining why Adamson believed that Plaintiff had provided the reporter with inaccurate information. (Ex. 3 to Pl.'s Dep., Letter from W. Adamson to G. Snell, Nov. 9, 2006.)

Plaintiff filed an FTR regarding the letter of warning, which included his rebuttal to the letter. (Ex. 4 to Pl.'s Dep., Fair Treatment Report, Nov. 17, 2006.) Hollowell reviewed the FTR and found that Plaintiff had not been treated unfairly. (Ex. 5 to Pl.'s Dep., Letter from R. Hollowell to G. Snell, Jan. 22, 2007.) In her letter to Plaintiff, Hollowell commended Plaintiff for his contributions but reminded him "to be cognizant of the contributions of [his] fellow employees." (*Id.*)

## V.   The Parking Space Incident

On February 7, 2007, Plaintiff parked his truck in the parking space closest to the front door of the MCP.  (Adamson Aff. ¶ 15.) Though the space was marked "Visitor,"[2] it was the space where Adamson parked daily and where his predecessor, Warden Charlie Golden, parked daily.  When Adamson arrived to work, he observed Plaintiff's truck in the parking space, temporarily parked his car in the adjacent space, and went inside the MCP to ask the deputy wardens why Plaintiff's vehicle was parked there.  (*Id.* ¶ 16.)  The deputy wardens replied that they were waiting for Adamson's instructions. (*Id.*)  Adamson instructed Deputy Warden Boone to tell Plaintiff that he was not permitted to park in the area reserved for visitors and the warden.  (*Id.*)  Boone spoke with Plaintiff outside Adamson's presence, and Plaintiff moved his vehicle.  (*Id.*)

The next day, Plaintiff parked next to Adamson's parking space, in another parking space marked "Visitor."  Adamson "believed this was an act of blatant insubordination given the instruction from the previous day."  (*Id.* ¶ 17.)  Adamson called Plaintiff to his office and suspended him for the rest of the day, despite Plaintiff's argument that he had not been told not to park where he did.  (*Id.* ¶ 18.)  Adamson prepared a disciplinary action report regarding the

---

[2]The space was previously marked "Warden," but Adamson had the space repainted to say "Visitor" so that visitors would feel comfortable parking there when Adamson was not at the MCP.  (Adamson Aff. ¶ 15.)

incident. (*Id.*) Later that day, Boone told Adamson that he had not communicated Adamson's instruction exactly as Adamson had given it; Boone said that in trying to communicate Adamson's message to Plaintiff, Plaintiff continued to protest, and Boone became frustrated and eventually said he did not care where Plaintiff parked as long as he did not park in the warden's space. (*Id.* ¶ 19.) On February 14, 2007, after thinking about what Boone had told him, Adamson decided to reduce the suspension to a verbal warning. (*Id.* ¶ 20.) On the discipline report, Adamson handwrote the words "reduced to verbal warning regarding parking," initialed the form, and forwarded it to Plaintiff and the Columbus human resources department. (*Id.*; Ex. 12 to Pl.'s Dep., Employee Disciplinary Record, Feb. 8, 2007.)

## VI. Plaintiff's Termination

Plaintiff submitted an FTR in response to the parking disciplinary action. (Ex. 13 to Pl.'s Dep., Fair Treatment Report, Feb. 16, 2007.) During the next week, Plaintiff sent multiple emails to Barron regarding the parking disciplinary action and his FTR. (Exs. 15-17 to Pl.'s Dep.) He copied Columbus Mayor Jim Wetherington on several of the emails, including emails dated February 20, 21, 23, and 26, 2007. (*Id.*) Mayor Wetherington also holds the title of Public Safety Director, and he is Adamson's boss. Plaintiff stated in his emails to Barron and Wetherington that the issues raised in

9

the FTR had not been resolved because Adamson had not responded to Plaintiff's sought relief.[3] Plaintiff also stated that Adamson had "falsified" his disciplinary report, that Adamson "can be extremely DECEITFUL," and that Adamson "continued his deceitful ways." (Ex. 16 to Pl.'s Dep., Email Chain at COL000055, COL000058-59.)

Adamson believed that Plaintiff's act of copying Mayor Wetherington on the emails violated several MCP rules, including the rule that requires officers to show respect to their fellow officers and the rule that prohibits the use of abusive language toward management. (Adamson Aff. ¶ 26.) On February 28, 2007, Adamson suspended Plaintiff without pay pending a pre-termination hearing, and he directed Plaintiff to appear for a pre-termination hearing on March 7, 2007. (Ex. 18 to Pl.'s Dep., Letter from W. Adamson to G. Snell, Feb. 28, 2007.) Plaintiff was also directed to show cause, in writing, as to why he should not be terminated for insubordination. (*Id.*) Plaintiff did not appear for the pre-termination hearing on March 7 or provide Adamson with any written statement as to why his employment should not be terminated. After Plaintiff missed the scheduled appointment, Adamson prepared a notice of termination.

---

[3]Adamson had, however, already revoked the suspension, which was part of the relief Plaintiff sought. Plaintiff also requested that Adamson post a memorandum on the MCP bulletin board explaining that employees should not park in "Visitor" parking spaces, and he asked to be assigned "to the 3rd shift for C.E.R.T. Team Operations." (Ex. 13 to Pl.'s Dep. 2.) It is not clear how or if the reassignment request relates to the parking disciplinary action.

(Adamson Aff. ¶ 28; Ex. 19 to Pl.'s Dep., Letter from W. Adamson to G. Snell, Mar. 7, 2007.)  Sometime on the morning of March 7, Adamson learned that Plaintiff had called in sick to his direct supervisor, though he did not request to postpone the pre-termination hearing. (Adamson Aff. ¶ 28.)  Adamson proceeded with the termination of Plaintiff's employment.

On March 15, 2007, Plaintiff filed an FTR challenging his termination.  (Ex. 20 to Pl.'s Dep., Fair Treatment Report, Mar. 15, 2007.)  Barron reviewed the FTR and responded in writing on April 2, 2007.  He upheld Plaintiff's termination.  (Ex. 21 to Pl.'s Dep., Letter from T. Barron to G. Snell, Apr. 2, 2007.)  Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Columbus on April 5, 2007, claiming that he was terminated in retaliation for filing the February 8, 2006 FTR—the FTR regarding Plaintiff's transfer from correctional counselor to correctional officer.  (Ex. 25 to Pl.'s Dep., Charge of Discrimination, Apr. 5, 2007.)

Plaintiff asked the City Manager to review Barron's decision, and the City Manager recommended that Plaintiff be granted a hearing before the Columbus personnel review board.  On September 19, 2007, Plaintiff, who was represented by counsel, presented his case to the personnel review board.  Assistant City Attorney Jaimie DeLoach represented Columbus and Adamson at the hearing.  The personnel

review board decided to reinstate Plaintiff's employment but determined that his "termination time served" should be considered a "suspension without pay or benefits, for insubordination." (Ex. 24 to Pl.'s Dep., Letter from T. Barron to G. Snell, Sept. 24, 2007.) The personnel review board declined to grant Plaintiff back pay, attorneys' fees, and other benefits. (*Id.*) Plaintiff appealed the personnel review board's decision to the Columbus city council, seeking an award of back pay, attorneys' fees, and other benefits. Plaintiff appeared before the city council on March 11, 2008. Based on the advice of the city attorney, Clifton Fay, the council determined that it did not have jurisdiction to hear Plaintiff's appeal.

## VII. Plaintiff's Claims

In his Complaint, Plaintiff asserts claims for (1) retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") against Columbus only (Am. Compl. ¶¶ 28-32); (2) retaliation in violation of the Equal Protection Clause of the Fourteenth Amendment against Columbus and Adamson (*id.* ¶¶ 33-34); (3) retaliation in violation of the First Amendment against Columbus and Adamson (*id.* ¶¶ 35-37); (4) negligent retention and supervision against Columbus (*id.* ¶¶ 38-43); and (5) intentional infliction of emotional distress against Columbus and Adamson (*id.* ¶¶ 44-47).

## I.  Title VII Retaliation Claim

Plaintiff claims that Columbus retaliated against him because of his opposition to race and sex discrimination in the December 6, 2005 FTR and the February 8, 2006 FTR.  (Am. Compl. ¶ 29; Pl.'s Dep. 188:9-189:23; Ex. 25 to Pl.'s Dep.)  Plaintiff claims that Columbus retaliated against him in the following ways: (1) the disciplinary action regarding the Columbus Times article; (2) the parking space disciplinary action; (3) the suspension without pay pending termination; (4) the termination of Plaintiff's employment; and (5) the Columbus human resources department members' support of Adamson in their responses to Plaintiff's FTRs.[4]  Plaintiff also appears to claim that Columbus retaliated against him for filing a charge of discrimination with the EEOC in the following ways: (1) the assistant city attorney advocated for Columbus and Adamson at Plaintiff's personnel review board hearing; (2) the city attorney advised the city council it did not have jurisdiction to hear Plaintiff's appeal;

---

[4]Any claim arising out of Plaintiff's transfer in 2006 to a different position is time-barred because it occurred more than a year before Plaintiff filed his charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(e)(1); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) (noting that in Georgia, charge must be filed within 180 days of discriminatory act); *Rizo v. Ala. Dep't of Human Res.*, 228 F. App'x 832, 835 (11th Cir. 2007) (per curiam) ("Failure to file a timely charge with the EEOC results in a bar of the claims contained in the untimely charge.").

and (3) Columbus did not conduct an investigation in response to Plaintiff's presentation before the city council.

Under 42 U.S.C. § 2000e-3(a), an employer may not discriminate against an employee because "he has opposed any practice made an unlawful employment practice [under Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." Title VII's participation clause "protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC." *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000). The opposition clause protects activity that occurs before the filing of a formal charge with the EEOC, such as submitting an internal complaint of discrimination to an employer, or informally complaining of discrimination to a supervisor. *Id.* Plaintiff makes claims under both the opposition clause and the participation clause, and the Court addresses each claim in turn.

Regardless of whether Plaintiff's retaliation claims are under the participation clause or the opposition clause, to survive summary judgment, Plaintiff must present sufficient evidence to allow a reasonable factfinder to conclude that Columbus retaliated against him for protected activity. Where, as here, Plaintiff has presented no direct evidence in support of his retaliation claims, the Court must employ the burden-shifting analytical framework established in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *E.g., Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010). Under that framework, Plaintiff must establish a prima facie case of retaliation by showing that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. *Brown*, 597 F.3d at 1181. If Plaintiff establishes a prima facie case of retaliation, Columbus must articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id.* If Columbus meets that burden, then Plaintiff must demonstrate that Columbus's proffered reason is pretext for retaliation. *Id.* at 1181-82.

A.   Opposition Clause Claim

Columbus contends that Plaintiff cannot establish a prima facie case as to his opposition clause claim because (1) Plaintiff did not engage in protected activity when he filed the December 6, 2005 and February 8, 2006 FTRs, and (2) Plaintiff cannot establish a causal connection between the FTRs and the alleged adverse employment actions. As discussed in more detail below, the Court agrees.

1.   *Protected Activity*

15

Plaintiff contends that he engaged in protected activity when he filed the FTRs on December 6, 2005 and February 8, 2006. To establish statutorily protected activity under Title VII's opposition clause, Plaintiff must show "'that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010) (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). Plaintiff must show both that he subjectively believed that Columbus "engaged in unlawful discrimination and that 'his belief was *objectively* reasonable in light of the facts and record present.'" *Id.* (quoting *Little*, 103 F.3d at 960). Plaintiff "need not prove that the conduct he opposed was actually unlawful, but the reasonableness of his belief that [Columbus] 'engaged in an unlawful employment practice must be measured against existing substantive law.'" *Id.* (internal citation omitted) (quoting *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999)).

Even if Plaintiff subjectively believed that Chester created a hostile work environment or that Adamson retaliated against him for complaining about the perceived hostile work environment, his belief was not objectively reasonable. As to Plaintiff's hostile work environment complaint, Plaintiff could not objectively believe that Chester's few comments created a hostile work environment based on

sex.  At the time of Plaintiff's complaints, an employee seeking to

establish a hostile work environment claim based on sex had to show

that (1) the employee belongs to a protected group, (2) the employee

has been subjected to unwelcome harassment, (3) the harassment was

based on the employee's sex, (4) the harassment "was sufficiently

severe or pervasive to alter the terms and conditions of employment

and create a discriminatorily abusive working environment," and (5)

a basis for holding the employer liable.  *Walton v. Johnson & Johnson

Servs., Inc.*, 347 F.3d 1272, 1279-80 (11th Cir. 2003) (per curiam).

However, Plaintiff pointed the Court to no evidence suggesting that

Chester's comments were "because of" sex.  Though "harassing conduct

need not be motivated by sexual desire to support an inference of

discrimination on the basis of sex," there must be *some* evidence to

support an inference of discrimination on the basis of sex.  *Oncale

v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).  Such an

inference may be supported if the harasser uses sex-specific and

derogatory terms that make it clear the harasser is motivated by sex,

or it may be supported by comparative evidence of how the harasser

treats members of both sexes.  *Id.* at 80-81.  Here, Plaintiff claims

that Chester asked Plaintiff how his wife puts up with him.  There is

nothing in this question to support an inference of discrimination on

the basis of sex.  And, while asking a female whether it is her "time

of the month" could be viewed as sex-specific and derogatory, it is

difficult to see how asking a male the same question is, without more, sufficient to support an inference of discrimination on the basis of sex.

Plaintiff also failed to produce evidence that Chester created an environment that a reasonable person would find hostile or abusive. Title VII "forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment." *Id.* at 81. Thus, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview." *Id.* (internal quotation marks omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (per curiam) (internal quotation marks omitted) (finding no hostile work environment based on single, isolated comment). Here, Plaintiff contends that a handful of comments amounted to a hostile work environment, but such a contention is not objectively reasonable in light of the applicable law. For all of these reasons, the Court concludes that Plaintiff did not engage in protected activity when he accused Chester of sexual harassment.

The next question is whether Plaintiff engaged in protected activity when he complained that Adamson discriminated against

Plaintiff when Adamson transferred Plaintiff to the correctional officer position. Plaintiff claimed that Adamson's decision was made in retaliation for Plaintiff's sexual harassment complaint and was also motivated by Plaintiff's age, race, and sex. As discussed above, Plaintiff's sexual harassment complaint was not protected activity, so Plaintiff cannot reasonably base a retaliation claim on that complaint. As to the discrimination claim, Plaintiff could not objectively believe that the transfer amounted to actionable discrimination. An employee seeking to show disparate treatment must show that he was a member of a protected class, he was qualified to do his job, he was subject to an adverse employment action, and he was treated differently than similarly situated employees outside of the protected class. *E.g., Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (per curiam). Plaintiff has not, however, pointed the Court to evidence that a reasonable person would conclude that the transfer—which did not affect Plaintiff's salary, shift assignment, or ability to engage in part-time employment—amounted to an "adverse employment action" under existing substantive law. An "adverse employment action" for purposes of a Title VII discrimination claim is "a *serious and material* change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). A transfer that only imposes a *de minimis* inconvenience or alteration of

responsibilities is not an adverse employment action. *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1453 & n.21 (11th Cir. 1998) ("It is important not to make a federal case out of a transfer that is *de minimis*, causing no objective harm and reflecting a mere chip-on-the-shoulder complaint."). Accordingly, the Court concludes that Plaintiff did not engage in protected activity when he filed the February 8, 2006 FTR.

    *2.    Causal Connection*

    Even if Plaintiff had engaged in protected activity when he filed the December 6, 2005 and February 8, 2006 FTRs, he has not presented sufficient evidence to establish a causal connection between the FTRs and the alleged acts of retaliation. Plaintiff can establish causation "by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam). "[M]ere temporal proximity, without more, must be 'very close.'" *Id.* (quoting *Breeden*, 532 U.S. at 273). In the absence of other evidence tending to show causation, a delay of several months between the protected activity and the adverse employment action is not enough to show the required causal connection. *Id.*

    Plaintiff filed his FTRs on December 6, 2005 and February 8, 2006. The first alleged retaliatory action—the letter of

20

warning regarding the newspaper article—occurred nine months after Plaintiff filed the second FTR. Thus, there is no "very close" temporal proximity between the FTRs and the alleged retaliatory actions. Plaintiff has pointed to no other evidence of a causal connection between the FTRs and the alleged retaliatory actions. Therefore, the Court finds that Plaintiff has failed to meet his burden of establishing a causal connection. For all of these reasons, Columbus is entitled to summary judgment on Plaintiff's opposition clause claim.

### B. Participation Clause Claim

Plaintiff also contends that Columbus retaliated against him for filing a charge of discrimination with the EEOC after Plaintiff was terminated and after the termination was upheld by the Columbus human resources department. Specifically, Plaintiff claims that Columbus engaged in actionable retaliation when (1) the assistant city attorney advocated for Columbus and Adamson at Plaintiff's personnel review board hearing; (2) the city attorney advised the city council it did not have jurisdiction to hear Plaintiff's appeal; and (3) Columbus did not conduct an investigation in response to Plaintiff's presentation before the city council. However, none of these actions amounts to an adverse employment action because none of the actions adversely affected Plaintiff's employment opportunities. In fact, following the personnel review board hearing, Plaintiff's employment

was reinstated, with no adverse effect on his salary, schedule, responsibilities, or any other material aspect of his employment. In the absence of an adverse employment action, Plaintiff's participation clause claim of retaliation fails.

## II. Equal Protection Retaliation Claims

In addition to his Title VII retaliation claim, Plaintiff attempts to make a retaliation claim under the Equal Protection Clause of the Fourteenth Amendment. The Eleventh Circuit has not recognized a right "under the *equal protection* clause to be free from retaliation." *Ratliff v. DeKalb County, Ga.*, 62 F.3d 338, 340 (11th Cir. 1995). Accordingly, Adamson is entitled to qualified immunity as to the equal protection retaliation claim. *Id.* at 341 (finding no clearly established right under equal protection clause to be free from retaliation). Moreover, even if such a claim were permitted against Columbus, it amounts to a claim that Plaintiff was treated differently than employees who did not complain about perceived discrimination and retaliation—a claim that is essentially the same as Plaintiff's Title VII retaliation claim. Such a claim would fail for the same reasons Plaintiff's Title VII retaliation claim fails. Therefore, Defendants are entitled to summary judgment on Plaintiff's equal protection retaliation claims.

## III. First Amendment Retaliation Claims

Plaintiff also argues that he was fired in retaliation for exercising his First Amendment rights. A government may not "discharge a public employee in retaliation for protected speech." *Chesser v. Sparks*, 248 F.3d 1117, 1122 (11th Cir. 2001) (internal quotation marks omitted). "A public employee's right to freedom of speech, however, is not absolute." *Id.* To qualify as constitutionally protected speech, "the speech must be made by a *government employee speaking as a citizen and be on a subject of public concern*." *Boyce v. Andrew*, 510 F.3d 1333, 1342-43 (11th Cir. 2007) (per curiam). If an employee did not speak as a citizen on a matter of public concern, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). If the government employee, "was speaking as an employee, then there can be no First Amendment issue." *Boyce*, 510 F.3d at 1343; *accord Mitchell v. Hillsborough Cnty.*, 468 F.3d 1276, 1283 n.17 (11th Cir. 2006) (noting that "'the First Amendment does not require a public office to be run as a roundtable for employee complaints'" (quoting *Connick v. Myers*, 461 U.S. 138, 149 (1983))).

Under *Garcetti* and *Boyce*, therefore, the Court must decide whether Plaintiff spoke on behalf of the public as a citizen or whether he spoke for himself as an employee. It is undisputed that

the speech at issue is Plaintiff's emails to Barron and Mayor Wetherington; in the emails, Plaintiff criticized Adamson's response to the parking space incident and accused Adamson of falsifying the disciplinary report. It is also undisputed that when Plaintiff wrote those emails, he was challenging the disciplinary action taken against himself and was not pursuing the complaint on behalf of anyone other than himself. The Court thus concludes that Plaintiff spoke for himself as an employee when he complained about the parking disciplinary action. Such speech amounts to a "quotidian, work-a-day grievance[]" that is not constitutionally protected. *Mitchell*, 468 F.3d at 1283 n.17. Accordingly, Defendants are entitled to summary judgment on Plaintiff's First Amendment claims.

## IV. State Law Claims

Plaintiff makes state law claims against Columbus for negligent supervision and retention, and he makes claims against Columbus and Adamson for intentional infliction of emotional distress. As discussed in more detail below, Defendants are entitled to immunity on Plaintiff's state law claims.

### A.   State Law Claims Against Columbus

Columbus contends that it is entitled to sovereign immunity on Plaintiff's state law claims. Columbus is a consolidated city-county government, and the Court views Columbus as a county for purposes of the sovereign immunity inquiry. *See Bowen v. Columbus*, 256 Ga. 462,

24

462-63, 349 S.E.2d 740, 741-42 (1986). The doctrine of sovereign immunity protects governments, including counties, from suit unless they have waived their immunity. *Williams v. Whitfield County*, 289 Ga. App. 301, 302-03, 656 S.E.2d 584, 586 (2008). Sovereign immunity "may only be waived by a legislative act which specifically provides that sovereign immunity is waived and the extent of such waiver." *Id.* at 302, 656 S.E.2d at 586. Here, Plaintiff has not established any waiver of immunity by Columbus, so Columbus is entitled to summary judgment on Plaintiff's state law claims. *See id.* at 305, 656 S.E.2d at 588 (finding that county was entitled to sovereign immunity on plaintiff's state law tort claims because plaintiff had not established any waiver of immunity).

    B.    State Law Claim Against Adamson

    Adamson argues that he is entitled to official immunity as to Plaintiff's claim for intentional infliction of emotional distress. A suit against a government employee sued in his individual capacity "is barred by official immunity where the public official has engaged in discretionary acts that are within the scope of his or her authority, and the official has not acted in a wilful or wanton manner; with actual malice; or with the actual intent to cause injury." *Brown v. Penland Constr. Co.*, 281 Ga. 625, 625-26, 641 S.E.2d 522, 523 (2007) (citing *Gilbert v. Richardson*, 264 Ga. 744, 752, 452 S.E.2d 476, 482-83 (1994)); *see also* Ga. Const. art. I,

§ II, ¶ IX(d). Plaintiff cannot seriously dispute that Adamson was engaging in discretionary acts when he made the challenged employment decisions here. Further, Plaintiff has not pointed to sufficient evidence that Adamson acted with malice or with actual intent to cause injury. Therefore, Adamson is entitled to official immunity on Plaintiff's intentional infliction of emotional distress claim.

Even if Adamson were not entitled to official immunity on Plaintiff's intentional infliction of emotional distress claim, Plaintiff cannot establish such a claim on the merits. To prevail on his intentional infliction of emotional distress claim, Plaintiff must show that (1) Adamson's "conduct was intentional or reckless;" (2) Adamson's "conduct was extreme and outrageous;" (3) "a causal connection existed between the wrongful conduct and the emotional distress;" and (4) "the emotional harm was severe." *Abdul-Malik v. AirTran Airways, Inc.*, 297 Ga. App. 852, 856, 678 S.E.2d 555, 558-59 (2009). Here, Plaintiff has pointed to no conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*, 678 S.E.2d at 559 (internal quotation marks omitted). Further, Plaintiff has not pointed to admissible evidence that he sustained severe emotional harm. For these reasons, Adamson is entitled to summary judgment on Plaintiff's intentional infliction of emotional distress claim.

CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (Doc. 18) is granted. Defendants' Motion for Discovery Sanctions (Doc. 16) is moot.


IT IS SO ORDERED, this 7th day of July, 2010.


S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE